**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**UNITED STATES OF AMERICA**

v.                                                        **Criminal Action No. 3:97-CR-20-01**

**ERIC M. TURNER,**

      **Defendant.**

**REPORT AND RECOMMENDATION
THAT DEFENDANT'S PETITION FOR NEW TRIAL BE DENIED**

## I. Introduction

On December 23, 2008, Eric M. Turner ("Defendant") filed a Motion for New Trial,[1] Motion to Appoint Counsel,[2] and Motion to Conduct Discovery.[3] On July 27, 2009, Defendant filed a Motion for New Trial,[4] Motion for Discovery,[5] and Motion to Appoint Counsel.[6] The Government did not respond to any motion.

## II. Facts

On December 10, 1997, Defendant was convicted by a jury for the United States District Court for the Northern District of West Virginia on count 1, continuing criminal enterprise in violation of 21 U.S.C. § 848; count 3, killing resulting from continuing criminal enterprise in

---

[1] Dkt. No. 252.

[2] Dkt. No. 254.

[3] Dkt. No. 255.

[4] Dkt. No. 261.

[5] Dkt. No. 262.

[6] Dkt. No. 263.

1

violation of 21 U.S.C. § 848(e)(1)(a); count 4, interstate travel in aid of a racketeering enterprise in violation of 18 U.S.C. §§ 1952, 2 and count 5, using and carrying a firearm during a crime of violence in violation of 18 U.S.C. §§ 942(c), 2.[7] On December 17, 1997, Defendant was adjudged guilty upon acceptance of the jury verdict.[8] On April 17, 1998, the Court sentenced Defendant to imprisonment for a term of life plus five years on counts 1, 3, 4, and 5.[9] Defendant filed an appeal on April 20, 1998.[10] By decision dated December 2, 1999, the Fourth Circuit Court of Appeals affirmed Defendant's conviction and sentence.[11] Defendant then filed a petition for writ of certiorari with the United States Supreme Court. The petition was denied on April 3, 2000.

Defendant filed his first Motion to Vacate, Set Aside, or Correct Sentence by a person in Federal Custody Under 28 U.S.C. § 2255 on January 11, 2001.[12] The motion was denied on February 21, 2001.[13] Defendant appealed the denial of his § 2255 motion in the Fourth Circuit Court of Appeals on May 29, 2001.[14] The Court of Appeals dismissed Defendant's appeal

---

[7] Dkt. No. 103.

[8] Dkt. No. 111.

[9] Dkt. No. 144.

[10] Dkt. No. 146.

[11] Dkt. No. 179.

[12] Dkt. No. 188.

[13] Dkt. No. 193.

[14] Dkt. No. 196.

because it was untimely filed.[15]

Defendant filed a second Motion to Vacate, Set Aside, or Correct Sentence by a person in Federal Custody Under 28 U.S.C. § 2255 on July 31, 2002.[16] The motion was denied on March 4, 2003, because Defendant had not received authorization to file a second or successive § 2255 motion.[17]

Defendant filed his third Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody Under 28 U.S.C. § 2255 on May 31, 2006.[18] After this Court's Report and Recommendation entered on November 19, 2007, recommending that the motion be dismissed,[19] Defendant filed a Motion to Withdraw his third § 2255 motion.[20] On January 23, 2008, Defendant's Motion to Withdraw was granted, and the third § 2255 motion was dismissed.[21]

### III. **Analysis**

**A.    Whether Defendant is Entitled to a New Trial Based on Newly Discovered Evidence**

In both of Defendant's motions for a new trial, Defendant argues that he is entitled to a new trial based on newly discovered evidence. Defendant acknowledges that the motions were filed well beyond the three-year limitation in Rule 33; however, Defendant argues that the delay

---

[15] Dkt. No. 198.

[16] Dkt. No. 217.

[17] Dkt. No. 231.

[18] Dkt. No. 237.

[19] Dkt. No. 246.

[20] Dkt. No. 248.

[21] Dkt. No. 249.

was the product of excusable neglect.

Rule 33 provides that, upon motion by a defendant, a "court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed.R.Crim.P. 33(a). The Rule further provides that "any motion for a new trial grounded on newly discovered evidence must be filed within 3 years of the verdict or finding of guilty," and that "[a]ny motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 7 days after the verdict or finding of guilty." Fed.R.CrimP. 33(b). Though Rule 33 specifies time limits for filing the motion, the Rule must be read in conjunction with Rule 45. United States v. Munoz, 605 F.3d 359, 367 (6th Cir. 2010). Rule 45 states that "[w]hen an act must or may be done within a specified period, the court . . . may extend the time . . . on a party's motion made . . . after the time expires if the party failed to act because of excusable neglect." Fed.R.Crim.P. 45(b).

The Fourth Circuit has yet to discuss what constitutes "excusable neglect" in the context of a late-filed Rule 33 motion. Therefore, this Court is guided by the jurisprudence of its sister circuit. Construing decisions[22] by the United States Supreme Court, the Sixth Circuit concluded that the same factors used to determine excusable neglect in other cases could be applied in criminal cases and found that "the determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." Munoz, 605 F.3d at 368. The factors to be used include:

(1)    the danger of prejudice to the nonmoving party;

---

[22] Pioneer Investment Services Co. v. Brunswick Associates, 507 U.S. 380 (1993); Stutson v. United States, 516 U.S. 193 (1996).

4

(2)    the length of the delay and its potential impact on judicial proceedings;

(3)    the reason for the delay;

(4)    whether the delay was within the reasonable control of the moving party; and

(5)    whether the late-filing party acted in good faith."

Id. (citing Nafziger v. McDermott Int'l, Inc., 467 F.3d 514, 522 (6th Cir. 2006)).

Defendant argues that the deposition of Denise Grantham ("Grantham") taken on November 11, 2000, is newly discovered evidence, which entitles him to a new trial. Acknowledging that he filed the motion well beyond the three-year statutory limit, Defendant argues, using the Pioneer factors, that his failure to file the motion until 2008 is excusable. Specifically, Defendant argues that the reason for delay and whether the delay was within his reasonable control weigh heavily in his favor and in excusing neglect because his attorney was not present for the deposition, nor was he notified regarding the deposition.

The Court must disagree. Defendant admits in his motion that he learned of the deposition when examining the docket and discovering that his co-defendant Pernell Jeffrey Sellers ("Sellers") filed a motion for a new trial based on the deposition. This motion for new trial was denied by Judge Broadwater on January 16, 2003. Even though Defendant had no knowledge of the deposition when it was taken, the Court did. Accordingly, the deposition is not newly discovered evidence to the Court. The Court had the information upon the filing of Sellers's motion on December 7, 2000.[23] Of more importance is that the Court was aware of the potential impact on Defendant and stated in the opinion that "any success of this motion would

---

[23] Dkt. No. 186.

probably be favorable for Eric Turner."[24]  The Court, however, declined to find Sellers was entitled to a new trial based on Grantham's November 2000 deposition for several reasons.

In the Memorandum and Order denying Sellers's motion for a new trial, Judge Broadwater examines whether Grantham's November 2000 deposition qualifies as newly discovered evidence.  A district court may grant a new trial based upon a witness's recantation only when (a) the Court is reasonably satisfied that the testimony given by the material witness in the first instance was false; (b) that the jury might have reached a difference conclusion without the recanted testimony; and (c) that the party seeking the new trial was taken by surprise when the false testimony was given and was unable to meet it or did not know of its falsity until after the trial.  United States v. Wallace, 528 F.2d 863, 866 (4th Cir. 1976).  The Court found that Grantham's deposition did not qualify as newly discovered evidence because it did not meet either the first or second prongs of the test.  As to the first prong, the Court found it could not be reasonably satisfied that the original testimony was false.  The Court found that though Grantham was untrue in an initial interview in December 1996, all testimony in subsequent interviews was consistent.  Further, the Court found that Grantham received a sentence reduction based on her cooperation with the Government and did not claim that her testimony was untrue.  Finally, the Court found that in the three years between Defendant's trial and the December 2000 deposition, Grantham and Defendant had a child who is being raised by Defendant's family.  The Court concluded that Grantham had no reason to be untruthful at trial.

As to the second prong, the Court found that even if Grantham's trial testimony was false, as she testified to at the December 2000 deposition, there was still ample evidence to

---

[24] Dkt. No. 224, P. 6.

support the jury's verdict even without Grantham's testimony. At trial, there was extensive testimony placing Defendant at the scene of the crime along with forensic and DNA testing results connecting Defendant to the victim, gun, and coat.

Accordingly, though Defendant may not have been aware of the results of the deposition immediately following the deposition, the Court was made aware in the motion for new trial filed by Defendant's co-defendant, Pernell Sellers. The Court determined that the deposition was not newly discovered evidence and contemplated the potential impact on Defendant, in addition to co-defendant Sellers. Because the evidence is not newly discovered evidence based on this Court's jurisprudence, Defendant is not entitled to a new trial.

Should the District Court disagree with the undersigned's recommendation and find that the evidence is newly discovered, the Court will examine whether Defendant's delay was the product of excusable neglect.

**B.    Whether the Delay is Excusable Neglect**

To find excusable neglect, the Court must balance the five Pioneer factors: (1) danger of prejudice to the nonmoving party; (2) length of delay; (3) reason for delay; (4) whether delay was in the reasonable control of the moving party; and (5) whether the late-filing party acted in good faith. Munoz, 605 F.3d at 368. The "factors 'do not carry equal weight; the excuse given for the late filing must have the greatest import. While [the others] might have more relevance in a closer case, the reason-for-delay factor will always be critical to the inquiry.'" Id. at 372 (quoting Lowry v. McDonnell Douglas Corp., 211 F.3d 457, 463 (8th Cir. 2000)).

    1.    Danger of Prejudice to the Nonmoving Party

In his Motions, Defendant argues that though there is "significant" danger of prejudice to

the Government, the Government has at its disposal certain tools to decrease the potential of prejudice. Specifically, Defendant first argues that the U.S. Marshals and other law enforcement agencies can compel the attendance of witnesses. Second, Defendant urges that the Government may move to hold uncooperative witnesses in contempt of court. Third, Defendant states that the Government has transcripts and recordings of previous testimony for unavailable witnesses. Finally, Defendant suggests that if physical evidence was lost, then the parties can work out an agreement. The Government did not respond to Defendant's Motions.

Defendant is creative with his possible solutions; however, the benefits of Defendant's proposals do not outweigh the potential of prejudice to the nonmoving party - the Government. Defendant's trial was well over ten years ago. In Munoz, the Court questioned whether six months was a sufficient period of time to create a prejudice. Id. at 371. Though the Court concluded that on the facts of the case six months was not a significant period to cause witnesses to lose their memories, the circumstances in the case at bar are significantly worse. Defendant was convicted in December 1997 - nearly thirteen years ago. Not only would the Government be prejudiced by re-trying a case from 1997, but also Defendant's counsel would be prejudiced. Additionally, Defendant concedes the possibility for the destruction of physical evidence. This is extremely detrimental to both sides, not just the Government.

Therefore, this factor weighs in favor of the Government.

2.   The Length of Delay and its Potential Impact on Judicial Proceedings

Defendant argues that though the length of delay is significantly long, the reasons for the delay justify the delay. Defendant also states that any impact on judicial proceedings "is only a

8

question that the Court can answer."[25] The Government did not respond.

The Court cannot agree with Defendant. The first of the two motions for new trial was filed in December 2008 - eleven years after the jury verdict. A delay of this magnitude will have a grave impact on any subsequent judicial proceeding because of potential compromises to witnesses' memories, destruction of physical evidence, and attorney movement. Some of these risks were conceded by Defendant.

This factor also weighs in favor of the Government.

3/4.    Reason for Delay and Whether Delay was Within Defendant's Control

Defendant contends that the reason for delay is excusable and was not within his control for three reasons: 1) neither he nor his counsel took Grantham's 2000 statement; 2) neither he nor his counsel were present for the statement; and 3) neither he nor counsel was made aware or given a copy of the statement. The Government did not respond.

Though the Court can appreciate that neither Petitioner nor his counsel was present for or given a copy of Grantham's statement, Defendant concedes in his Motions that "he recieved [sic] several letters from counsel concerning the fact that Ms. Grantham was to be debriefed."[26] Despite the fact that Defendant's counsel's tenure ended, Defendant easily could have inquired as to whether the statement was taken. Defendant states that he was made aware of the November 2000 statement by reading a motion for new trial filed by co-defendant Pernell Sellers. Obviously, Defendant had access to a computer, and there is nothing to indicate that Defendant was prevented access to the computer prior to 2007 to inquire into whether the

---

[25] Dkt. No. 252, p. 8; Dkt. No. 261, p. 8.

[26] Dkt. No. 252, p. 9, Dkt. No. 261, p. 9.

statement was taken.

The Court must question whether Defendant was first made aware of the November 2000 statement in 2007 while reading co-defendant Sellers's motion for new trial. In Defendant's second § 2255 motion, Defendant indicates that he is seeking an order to be allowed to correct the language in his presently filed successive § 2255 and submit newly discovered evidence.[27] Defendant states that he "has a particularized need for his trial transcripts to prove to the Courts that the key witness at his trial lied to secure a favor from the government attorney . . . ."[28] Subsequent to this Court's Report and Recommendation to deny Defendant's second § 2255, Defendant filed objections stating that he should be able to amend his previously filed § 2255 because of newly discovered evidence.[29] Defendant states that this newly discovered evidence was not previously available to him and "will establish that the government attorney that prosecuted my case used knowingly perjured testimony to secure a conviction by instructing the key witness at my jury trial to lie on the witness stand."[30] Defendant references Exhibit 1; however, it appears Defendant failed to attach anything to the objections. Throughout the objections and second § 2255, Defendant does not indicate specifically who this "key witness" is. Defendant simply refers to this person and his/her activity as "perjured testimony of the key witness." Though Defendant does not specifically reference the recanted testimony of Grantham in the November 2000 deposition, the language used by Defendant in both the objections and the

---

[27] Dkt. No. 217.

[28] Dkt. No. 217, p. 1.

[29] Dkt. No. 223.

[30] Dkt. No. 223, p. 2.

second § 2255 is strikingly similar to that used in Defendant's Motions for New Trial. In his Motions, Defendant refers to Grantham as the Government's "star witness,"[31] "key witness,"[32] "material witness,"[33] and "key."[34]

This factor must also weigh in favor of the Government.

5.  Whether the Late-Filing Party Acted in Good Faith

Defendant argues that he brought the motions in good faith and in the interest of justice. Again, the Government did not respond, and the Court has no reason to believe Defendant acted in bad faith in either the delay or bringing the motion.

Accordingly, in balancing the Pioneer factors, it is clear that they do not favor finding the delay was the subject of excusable neglect. More importantly, the reason for delay favors the Government and heavily suggests finding against Defendant.

## IV. Recommendation

Based upon a review of the record, the undersigned recommends that Defendant's Motions for New Trial[35] be **DENIED** and dismissed from the docket because there is no newly discovered evidence upon which to grant a new trial. If the District Court disagrees and finds the evidence as newly discovered, then the Court also recommends that Defendant's Motions be

---

[31] Dkt. No. 252, ps. 8 & 19; Dkt. No. 261, ps. 8 & 19.

[32] Dkt. No. 252, p. 12; Dkt. No. 261, p. 12.

[33] Dkt. No. 252, p. 13; Dkt. No. 261, p. 13.

[34] Dkt. No. 252, p. 20; Dkt. No. 261, p. 20

[35] Dkt Nos. 252 & 261.

**DENIED** and dismissed because Defendant's delay was not the subject of excusable neglect. Additionally, the undersigned recommends that Defendant's Motions to Appoint Counsel[36] and Motions for Discovery[37] be **DENIED** as moot.

Within fourteen (14) days after being served with a copy of this report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985): United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to mail a copy of this Report and Recommendation to the *pro se* Defendant by certified mail, return receipt requested, to his last known address on the docket sheet, and to counsel of record, as applicable.

DATED: August 13, 2010

/s/ *James E. Seibert*
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE

---

[36] Dkt Nos. 254 & 263.

[37] Dkt. Nos. 255 & 262.