UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG

**UNITED STATES OF AMERICA,**

Plaintiff,

v.

CRIMINAL NO. 3:97-CR-20-1
(Judge Bailey)

**ERIC MICHAEL TURNER,**

Defendant.

# ORDER ADOPTING REPORT AND RECOMMENDATION

## I. INTRODUCTION

On this day, the above-styled matter came before this Court upon consideration of the Report and Recommendation of United States Magistrate Judge James E. Seibert. By Local Rule, this action was referred to Magistrate Judge Seibert for submission of a proposed report and a recommendation ("R&R"). Magistrate Judge Seibert filed his R & R on August 13, 2010 [Doc. 267]. In that filing, the magistrate judge recommends that this Court deny Defendant Eric Michael Turner's Motion for a New Trial [Doc. 252].

Pursuant to 28 U.S.C. § 636 (b)(1)(c), this Court is required to make a *de novo* review of those portions of the magistrate judge's findings to which objection is made. However, this Court is not required to review, under a *de novo* or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed. ***Thomas v. Arn***, 474 U.S. 140, 150 (1985). In addition, failure to file timely objections constitutes a waiver of *de novo*

1

review and the right to appeal this Court's Order. 28 U.S.C. § 636 (b)(1); **Snyder v. Ridenour**, 889 F.2d 1363, 1366 (4th Cir. 1989); **United States v. Schronce**, 727 F.2d 91, 94 (4th Cir. 1984). Here, objections to Magistrate Judge Seibert's R & R were due within fourteen (14) days of its receipt, pursuant to 28 U.S.C. § 636 (b)(1) and Fed.R.Civ.P. 72 (b). The defendant timely filed objections [Docs. 273 & 278]. Accordingly, this Court will review the portions of the R&R to which objections were made under a *de novo* standard of review. The remaining portions will be reviewed for clear error.

## II. FACTS AND PROCEDURAL HISTORY

On December 10, 1997, the defendant was convicted by a jury for the Northern District of West Virginia on Count 1, continuing criminal enterprise in violation of 21 U.S.C. § 848; Count 3, killing resulting from continuing criminal enterprise in violation of 21. U.S.C. § 848(e)(1)(a); Count 4, interstate travel in aid of a racketeering enterprise in violation of 18 U.S.C. §§ 1952, 2; and Count 5, using and carrying a firearm during a crime of violence in violation of 18 U.S.C. §§ 924(c), 2. On April 17, 1998, the Court sentenced the defendant to imprisonment for a term of life plus five years on Counts 1, 3, 4, and 5.

The defendant filed an appeal on April 20, 1998 [Doc. 146]. By decision dated December 6, 1999, the Fourth Circuit Court of Appeals affirmed the petitioner's conviction and sentence [Doc. 179]. The defendant then filed a petition for writ of certiorari with the United States Supreme Court, which was denied on April 3, 2000.

Subsequently, on January 11, 2001, the defendant filed his first of three motions to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255. [Doc. 188]. Defendant's motion was denied, and he appealed that denial to the Fourth Circuit Court of Appeals [Doc. 196]. His appeal was denied as untimely [Doc. 198]. The defendant's

2

second § 2255 petition was likewise denied on March 4, 2003, because he had not received authorization from the Fourth Circuit Court of Appeals to file a second petition. See Doc. 231. For the same reasons, the third § 2255 petition was denied on May 31, 2006 [Doc. 237].

Turner's instant Motion for New Trial is based upon the recantation of the trial testimony of Denise Grantham. Grantham was one of thirty-six (36) witnesses who were called to testify by the Government. At trial, Grantham testified that co-defendant Pernell Sellers told Eric Turner something to the effect that "when you sing someone a lullaby, aren't you supposed to put them to sleep." (Trial Transcript Volume V, p. 133). This prompted Turner to finish the murder of Jennifer Folmar. Grantham also testified at trial that, after Jennifer Folmar's murder, she heard Sellers and Turner make statements indicating they were responsible for the killing. She understood that Turner shot Folmar, and Sellers stabbed her with a knife. (Trial Transcript Volume V, p. 140).

Based upon Grantham's recantation four years after the trial, the Court conducted an evidentiary hearing regarding the recantation at the request of defendant Sellers for purposes of his Motion for New Trial. Grantham then testified that her trial testimony was based upon hearsay and not personal knowledge or observations. Further, she said she could not recall any post-murder statements made by defendants due to her own drug use.

This Court also finds it important to note the procedural history of co-defendant Pernell Jeffrey Sellers' Motion for a new trial, the basis of which is identical to basis of the motion for new trial in this case; i.e., the recantation of Grantham's trial testimony. Judge Broadwater denied Sellers' motion for new trial January 17, 2003 [Doc. 224]. More importantly, on August 23, 2003, the Fourth Circuit Court of Appeals affirmed Judge

Broadwater's order by a *per curiam* opinion [Doc. 232]. Subsequently, the United States Supreme Court denied Sellers' petition for writ of certiorari [Doc. 234].

Finally, this Court notes that the physical evidence used in this case has been destroyed at the Government's request, under the belief that the reasons for retaining the evidence no longer prevailed as a result of the above decisions [Doc. 236].

## III. **DISCUSSION**

### A. Standard of Review

Rule 33 provides that, upon motion by a defendant, a "court may vacate any judgment and grant a new trial if the interest of justice so requires." The Rule further provides that "any motion for a new trial grounded on newly discovered evidence must be filed within 3 years of the verdict or finding of guilty . . . ." Id. Though Rule 33 specifies time limits for filing the motion, the Rule must be read in conjunction with Rule 45. ***United States v. Munoz***, 605 F.3d 359, 367 (6th Cir. 2010). Rule 45 states that "[w]hen an act must or may be done within a specified period, the court . . . may extend the time . . . on a party's motion made . . . after the time expires if the party failed to act because of excusable neglect." The factors to consider in determining whether such "excusable neglect" occured include: "(1) the danger of prejudice to the nonmoving party; (2) the length of delay and its potential impact on judicial proceedings; (3) the reason for delay; (4) whether the delay was within the reasonable control of the moving party; and (5) whether the late-filing party acted in good faith." *Id.* This Court notes that the test for excusable neglect need not be considered if the Court finds that the evidence is not "newly discovered." Such is the case here.

The standard for granting a new trial based on "newly discovered" evidence was set

4

forth by the Fourth Circuit in **United States v. Chavis**, 880 F.2d 788, 793 (4th Cir. 1989). The Fourth Circuit held that a motion for new trial should be granted only if: (1) the evidence is in fact newly discovered; (2) the movant exercised due diligence in discovering the evidence; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material to the issues; and (5) the evidence would probably result in an acquittal at a new trial. See also **United States v. Bynum**, 3 F.3d 769, 774 (4th Cir. 1993).

Most relevant to this case, when the "newly discovered evidence" claim is the result of a witness' recantation of testimony, a district court may only grant a new trial if the defendant meets the following three-prong test: (a) the Court is reasonably satisfied that the testimony given by the material witness in the first instance was false; (b) that the jury might have reached a different conclusion without the recanted testimony; and (c) that the party seeking the new trial was taken by surprise when the false testimony was given and was unable to meet it or did not know of its falsity until after the trial. **United States v. Wallace**, 528 F.2d 863 (4th Cir. 1976). The failure of a defendant to meet any one of the **Wallace** test's three parts is fatal to the new trial motion. **United States v. Carmichael**, 726 F.2d at 159 (4th Cir. 1984) (relying on **United States v. Johnson**, 487 F.2d 1278, 1279 (4th Cir. 1973)).

B. Application of **United States v. Wallace**

1. In order for the defendant to prevail on his motion for a new trial, this Court must find the testimony originally provided by Grantham to be false. This Court finds that this element of the **Wallace** test is not reasonably satisfied.

In the circumstances where a motion for new trial is based upon recantation of trial testimony, the recantation should be "looked upon with the utmost suspicion." **United**

States v. Johnson, 487 F.2d 1278, 1279 (4th Cir. 1973) (citing *United States v. Lewis*, 338 F.2d 137, 139 (6th Cir. 1964), *United States v. Troche*, 213 F.2d 401, 403 (2d Cir. 1954)).

In this case, Grantham was approached by law enforcement in December 1996. At that time, Grantham was living with defendant Eric Turner in Washington, D.C. Grantham told law enforcement that she did not know anything about Jennifer Folmar's murder or any drug dealing by either defendant. Subsequently, she sought out law enforcement in West Virginia. She told them that her statement in December of 1996 was false. She said she made the false statement due to pressure and fear from Eric Turner and his associates.

Law enforcement again interviewed Grantham in April and May of 1997. At that time, Grantham was represented by legal counsel and was living in West Virginia. She did not yet have a plea agreement with the Government during those interviews.

On May 14, 1997, Grantham testified before a federal grand jury pursuant to a plea agreement with the Government. Her trial testimony occurred in December 1997. Grantham's trial testimony, testimony before the grand jury, and two interviews in April and May of 1997 were all generally consistent.

Further, Grantham was subjected to a lengthy and extensive cross-examination during the trial by counsel for both defendants (Trial Transcript Volume V, pp. 154-199). Grantham's cross-examination attacked her credibility and veracity. This also included her first statement to law enforcement where she did not mention the "lullaby" statement and that she did mention the statement in all subsequent interviews or testimony (Trial Transcript Volume V, p. 187).

After Turner's trial, Grantham received a sentence reduction based upon Fed. R.

Crim. P. Rule 35(b) for her cooperation with the Government. At that time, Grantham never claimed that her trial testimony was in any way false. The Rule 35(b) reduction decreased Grantham's prison sentence by approximately six (6) years.

Grantham waited approximately three years after she received a Rule 35 reduction before she claimed that her trial testimony was false. Subsequently, and importantly, Grantham had a child by Eric Turner. During the evidentiary hearing, Grantham testified that she had to come to terms with the fact that she played a role sending her daughter's father to prison for life. She also testified that her daughter was being raised by Eric Turner's family.

This Court concludes that there is no plausible reason to believe Grantham's recantation. Grantham had a strong motivation to tell the truth at trial. At trial, her credibility and veracity was assessed by the Court, the jurors, and attorneys for defendants and the Government. Accordingly, this Court is not reasonably satisfied that the original testimony was false.

2. Even if Grantham's trial testimony were false, the defendant's motion for a new trial still fails to satisfy the second part of the *Wallace* test. This requires the likelihood of a different verdict "but for" the false testimony. This Court concludes that there is ample evidence to support the jury's verdict even without Grantham's testimony.

The evidence presented at trial established that shortly before midnight on October 24, 1996, police were on a routine patrol in Shepherdstown, West Virginia (Trial Transcript Volume II, pp. 40-58). They noticed a young woman sitting in the driver's seat of a white car parked along the side of the road near Ray Street. The police rounded the corner and drove up Ray Street. They observed a man in a light coat making a gesture with his arm

7

as though the man were waving or throwing something (Trial Transcript Volume II, p. 42). As the officers proceeded up Ray Street, they observed numerous individuals congregating outside.

Moments later the police returned to the area where the white car was parked and shined their light on the sole occupant. The officers could see blood coming from Folmar's neck, as she was dying from three gun shots to the head and 11 stab wounds to her neck, arm, chest, and back. Numerous officers responded to the scene and blocked off Ray Street. The officers quickly seized a light coat abandoned on a porch (Trial Transcript Volume II, p. 45). The coat appeared to have blood on it. Turner and Sellers were both on the porch, but neither claimed ownership of the coat (Trial Transcript Volume II, p. 46). The police found a pistol in the area where the man with the light coat was seen making a throwing gesture with his arm (Trial Transcript Volume II, p. 48); however, no one was arrested at the scene of the murder.

Over the next several months, the police investigation indicated that Folmar was murdered by Turner and Sellers, who suspected Folmer to be a police informant who was helping to monitor their crack cocaine distribution (Trial Transcript Volume II, p. 262).

The police learned that early on the morning of her death, Folmar had gone to a residence on Ray Street to purchase crack cocaine (Trial Transcript Volume V, p. 28). While Folmar was there, Turner came to the residence and delivered crack cocaine. Later that evening, Folmar came back to Ray Street in her car. At that time, someone yelled out that she was a cop or informant (Trial Transcript Volume II, p. 262; Volume III, p. 212).

Michael Green, one of the men standing on Ray Street, saw Sellers give a gun to Eric Turner (Trial Transcript Volume II, pp. 269, 270). The murder weapon belonged to

Sellers. Sellers had purchased the firearm from Henry Grantham for $100.00 (Trial Transcript Volume II, pp. 32, 51 & 52).

Folmar drove her car to the end of Ray Street and parked. Four witnesses saw Turner and another man go down the street where Folmar's car was parked (Trial Transcript Volume III, p. 213, Volume IV, pp. 18 & 229). Moments later, the witnesses heard two shots (Trial Transcript Volume II, p. 264; Volume III p. 213; Volume IV, pp. 18 & 229). Shortly thereafter, the police found a pistol in the area where the man with the light coat was seen making a throwing gesture with his arm (Trial Transcript Volume II, pp. 48 - 49). Folmar, a crack user in her early twenties, died at the hospital several hours later without ever regaining consciousness.

As stated above, Michael Green witnessed Sellers give a gun to Turner (Trial Transcript Volume II, pp. 269 - 270). Julian Pace, the man closest to Turner at the time, testified that he saw Turner shoot Folmar twice on this first trip to the car (Trial Transcript Volume IV, pp. 54-55). When they came running back up Ray Street, Ronald L. Kidrick, one of the men who first saw Turner go down the street, heard Turner say, "I got her." (Trial Transcript Volume IV, pp. 202, 203, & 230).

Later, Sellers went back to the car to see what was happening and found Folmar was still alive (Trial Transcript Volume II, p. 269). Julian Pace heard Turner ask Sellers for a "razor," meaning a knife (Trial Transcript Volume IV, pp. 58-59). Sellers then asked Richard Pannell if he had a razor blade (Trial Transcript Volume IV, p. 19). He stated "Yeah, I got them," meaning the knife, and then Turner went back down the hill (Trial Transcript Volume IV, p. 59). Julian Pace heard Turner say he (Turner) was going to finish what he started (Trial Transcript Volume IV, p. 61).

Turner and Sellers then made one final trip together to the car. Stephen Craig, sitting in a vehicle directly behind Folmar's car, saw a man in a light coat raise his hand toward the driver's head (Trial Transcript Volume IV, pp. 15-153). Ducking behind his own dashboard, Craig heard two more shots being fired into Folmar's car. Another witness, John Grantham, a little further down the street, identified this last shooter as Sellers (Trial Transcript Volume IV, p. 118). Witnesses saw both defendants coming back up Ray Street followed seconds later by a police patrol car. Derrick Monroe heard Turner say, "She was a cop" (Trial Transcript Volume V, p. 89). Ronald William Kidrick heard Turner say, "Man, I stuck her" (Trial Transcript Volume V, p, 11). Sellers told Turner to "shut up" (Trial Transcript Volume V, p. 12).

Forensic evidence placed Turner's hand within inches of Folmar's head when he shot her. Turner's fingerprint was found on the outside window of the driver's side door of Folmar's car. Folmar's DNA was found on the sleeve of both the light coat and the pistol. Numerous witnesses also identified Turner as wearing this specific coat. As Turner was bitten by a dog earlier in the day, Turner's DNA was also found on this coat. Gunshot residue was also found on the inside and outside of the coat.

The drug investigation revealed that for several months prior to the murder, both Turner and Sellers were dealing crack cocaine through a network of runners and crack houses (Trial Transcript Volume IV, pp. 13, 114, 115, 238, 240-243). Philip Kedrick testified he sold $70,000 to $80,000 worth of crack cocaine for the defendants (Trial Transcript Volume IV, pp. 252 & 253).

Therefore, even without Grantham's trial testimony, the Court concludes there was ample evidence to support Turner's conviction or convictions.

## IV. Conclusion

This Court finds that there is no plausible reason to believe Grantham's recantation. Further, even if Grantham's trial testimony were false, the Court concludes that there was ample evidence to support the jury's verdict. Therefore, under the *Wallace* analysis, this Court finds the Court finds that Grantham's November 2000 deposition did not qualify as "newly-discovered" evidence under Rule 33.

Therefore, upon consideration of the magistrate judge's Report and Recommendation **[Doc. 267]**, it is the opinion of this Court that the same should be **ORDERED ADOPTED**. It is further Ordered that Defendant Eric Michael Turner's Motions for a New Trial **[Docs. 252 & 261]** are hereby **DENIED**. As a final matter, the defendant's Motions to Appoint Counsel **[Docs. 254 & 263]** and Motions for Discovery **[Docs. 255 & 262]** are also **DENIED**.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record herein and to mail a copy to the *pro se* petitioner.

DATED: March 23, 2011.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE